IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| MCKEE DOOR SALES OF COLUMBUS, INC. | : | CASE NO. _____ |
| 4200 HAMILTON SQ. BLVD. GROVEPORT, OHIO 43125 | : | JUDGE _____ |
| | : | |
| Plaintiff, | : | |
| | : | COMPLAINT |
| vs. | : | |
| | : | |
| OVERHEAD DOOR CORPORATION | : | JURY DEMAND ENDORSED HERON |
| DBA WAYNE-DALTON | : | |
| C/O CT CORPORATION | : | |
| REGISTERED AGENT | : | |
| 4400 EASTON COMMONS WAY, SUITE 125 | : | |
| COLUMBUS, OHIO 43219 | : | |
| | : | |
| Defendant. | : | |

## I.   PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff McKee Door Sales of Columbus, Inc. ("Plaintiff McKee") is an Ohio corporation located at 4200 Hamilton Sq. Blvd., Groveport, Ohio.

2.     Defendant Overhead Door Corporation, dba Wayne-Dalton ("Defendant Wayne-Dalton") is an Indiana corporation with its offices and principal place of business located at 2501 S. State Highway 121, #200, Lewisville, Texas.

3. Defendant Wayne-Dalton maintains manufacturing facilities located at 4576 Co. Rd. 160, in Mount Hope, Holmes County, Ohio and a sales center in Blacklick, Franklin County, Ohio.

4. Defendant Wayne-Dalton is subject to this Court's personal jurisdiction because it maintains manufacturing and sales facilities in Ohio (and has done so for decades), is systematically present in Ohio, and it has registered a statutory agent with Ohio's Secretary of State (CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219).

5. Venue is proper in Franklin County pursuant to Ohio R. Civ. P. 3(C) because Defendant Wayne-Dalton conducted activity that gave rise to the claim for relief here; this is a county where all or a part of the claims for relief arose; and otherwise.

## II. FACTUAL ALLEGATIONS

### A. McKee is experienced with and knowledgeable about Wayne-Dalton doors.

6. Plaintiff McKee was organized as an Ohio corporation approximately forty (40) years ago.

7. Plaintiff McKee has offices in Groveport and Cincinnati, Ohio.

8. Plaintiff McKee's principal place of business is located at 4200 Hamilton Sq. Blvd., Groveport, Franklin County, Ohio 43125.

9. Plaintiff McKee sells and services overhead doors and loading dock equipment to customers located in Ohio and Northern Kentucky.

10. Plaintiff McKee often serves as a subcontractor to general construction contractors.

11. Plaintiff McKee's role as a subcontractor involves, among other things, purchasing, selling, and installing commercial overhead doors.

12.     Plaintiff McKee has long-standing relationships with equipment and overhead door providers such as Pentalift Equipment, Cornell Iron Works, Albany Door Systems, and Defendant Wayne-Dalton.

13.     Plaintiff McKee has sold and serviced Wayne-Dalton overhead doors for approximately forty (40) years and installed thousands of Wayne-Dalton doors.

**B.      The course of dealing and course of performance between Plaintiff McKee and Defendant Wayne-Dalton**

14.     Plaintiff McKee is an authorized Wayne-Dalton dealer.

15.     After years of working together, Plaintiff McKee and Defendant Wayne-Dalton established a course of dealing and performance.

16.     As an authorized dealer, and at all times material to the transactions described herein, Plaintiff McKee ordered doors and parts using Defendant Wayne-Dalton's online portal ("Partner Connect").

17.     Plaintiff McKee connects electronically with Defendant Wayne-Dalton via Partner Connect and enters order information; Partner Connect generates a quote including a unique order number, the order date, shipping terms, order details, and pricing.

18.     Partner Connect quotes do not refer to or include terms and conditions.

19.     Defendant Wayne-Dalton manufactures doors ordered through Partner Connect for specific customers and applications after reviewing drawings and specifications for the installation.

20.     After accepting the order, manufacturing doors, and packing them for shipping, (and sometimes after shipping the doors), Defendant Wayne-Dalton generates an invoice.

21.     A sample Wayne-Dalton invoice (Invoice No. 18902007, from which pricing information has been redacted) is attached hereto as Exhibit A.

3

22.     By the time that Defendant Wayne-Dalton generates an invoice, it has accepted and fulfilled the order.

23.     Defendant Wayne Dalton's invoice forms include a reference to online terms and conditions: "This order is subject to the terms and conditions found at https://www.wayne-dalton.com/Documents/Invoice-Terms-and-Conditions.pdf" ("Purported Wayne-Dalton Terms").

24.     Upon information and belief, a true copy of the Purported Wayne-Dalton Terms, is attached and incorporated as Exhibit B.

25.     Plaintiff McKee never expressly or impliedly consented to the Purported Wayne-Dalton Terms.

26.     Defendant Wayne-Dalton fulfills Plaintiff McKee's orders without providing the Purported Wayne-Dalton Terms or seeking Plaintiff McKee's acceptance of such terms.

27.     The Purported Wayne-Dalton Terms do not apply to transactions between Defendant Wayne-Dalton and its authorized dealers, such as Plaintiff McKee.

28.     Defendant Wayne-Dalton has, through a course of dealing and course of performance with Plaintiff McKee, waived the Purported Wayne-Dalton Terms even if they otherwise would apply.

29.     Specifically, and without limitation to other waivers, Defendant Wayne-Dalton does not and has not required Plaintiff McKee to return defective doors to Defendant Wayne-Dalton at its factory.

30.     Instead, Defendant Wayne-Dalton visits the customer site and inspects its doors for defects.

31.     Defendant Wayne-Dalton satisfactorily repairs or replaces defectively manufactured doors – at the customer's site.

32.     Specifically, and without limitation to other waivers, Defendant Wayne-Dalton does not and has not enforced the Purported Wayne-Dalton Terms as to payment against Plaintiff McKee.

33.     The Purported Wayne-Dalton Terms state, in part, "For goods manufactured by Seller, Seller's standard limited warranty for the goods sold hereby shall apply."

34.     Upon information and belief, a true copy of Defendant Wayne-Dalton's Limited Warranty on Model 452 doors (as revised in January of 2021) ("Purported Wayne-Dalton Warranty"), is attached and incorporated as Exhibit C.

35.     Plaintiff McKee never expressly or impliedly consented to the Purported Wayne-Dalton Warranty.

36.     Defendant Wayne-Dalton fulfills Plaintiff McKee's orders without providing the Purported Wayne-Dalton Warranty or seeking Plaintiff McKee's acceptance of such warranty.

37.     The Purported Wayne-Dalton Warranty does not apply to transactions between Defendant Wayne-Dalton and its authorized dealers, including Plaintiff McKee.

38.     Defendant Wayne-Dalton has, through a course of dealing and course of performance with Plaintiff McKee, waived the Purported Wayne-Dalton Warranty.

**C.     Wayne-Dalton's sudden loss of quality with Model 452 Doors**

39.     Plaintiff McKee has installed thousands of the Model 452 door since Wayne-Dalton introduced it in the early 1980's.

40.     The Wayne-Dalton Model 452 door is a premium "FullView" commercial overhead door with aluminum frames and clear or translucent panes.

41.     Defendant Wayne-Dalton claims that the Model 452 door is "insulated, weather-resistant, and virtually maintenance free."

5

42.     Defendant Wayne-Dalton claims that its Model 452 door is "ideal for applications that require a commercial sectional door such as auto dealerships, car washes, and restaurant patios."

43.     Defendant Wayne-Dalton intentionally markets its Model 452 door as a suitable choice for public buildings such as fire stations by using fire station photographs in its promotional materials per Figures 1 and 2, below:





*Figure 1: Screenshot capture from Wayne-Dalton website as of August 31, 2022*

Franklin County Ohio Clerk of Courts of the Common Pleas- 2022 Oct 04 4:14 PM-22CV006924



*Figure 2: Photograph from Wayne-Dalton literature for Models 451/452 as of August 31, 2022*

44.     Until recently, upon information and belief, Plaintiff McKee's customers who purchased Wayne-Dalton Model 452 doors were largely satisfied with the doors and rarely reported problems with them.

45.     On those occasions when customers reported problems with Wayne-Dalton Model 452 doors, Wayne-Dalton responded and resolved problems efficiently and effectively – at the customer's location.

46.     Until recently, Defendant Wayne-Dalton would replace defective Model 452 doors at no cost.

47.     Until recently, Wayne-Dalton Model 452 doors did not allow excessive moisture intrusion.

48.     Until recently, Wayne-Dalton Model 452 doors did not retain water within their frames.

49.     Until recently, Wayne-Dalton Model 452 doors did not produce an "indoor waterfall" when the doors were raised.

7

50.     In the last few years, however, Plaintiff McKee has received multiple customer complaints relating to excessive water intrusion in Wayne-Dalton Model 452 doors.

**D.     McKee installed defectively manufactured Wayne-Dalton doors in Granville's new fire station.**

51.     Granville Township awarded a construction management contract for a new fire station to be constructed in Granville, Licking County, Ohio to general contractor Robertson Construction Services, Inc. ("Robertson") on or about April 25, 2018.

52.     Robertson subcontracted with Plaintiff McKee to provide overhead doors at the Granville fire station.

53.     On or about April 29, 2020, Plaintiff McKee ordered ten (10) Wayne-Dalton Model 452 doors for the Granville fire station.

54.     The Wayne-Dalton Partner Connect quote for the Granville fire station order (from which pricing information has been redacted) is attached and incorporated as Exhibit D.

55.     Defendant Wayne-Dalton's invoice (Invoice No. 18393805) for the Granville fire station doors (from which pricing information has been redacted) is attached and incorporated as Exhibit E.

56.     Defendant Wayne-Dalton delivered the Granville fire station doors to Plaintiff McKee at its Groveport, Ohio location on or about July 2, 2020.

57.     Between August 10, 2020 and August 31, 2020, Plaintiff McKee installed the Granville fire station doors.

58.     The Granville Fire Department moved into its new fire station on or about October 2, 2020.

59.     On or about June 30, 2021, Robertson's superintendent sent video of leaking Wayne-Dalton Model 452 overhead doors installed at the Granville fire station to Plaintiff McKee.

60.     On or about July 6, 2021, Plaintiff McKee notified Defendant Wayne-Dalton of the defective Granville fire station doors.

61.     On or about July 12, 2021, Defendant Wayne-Dalton notified Plaintiff McKee of a solution for fixing the Granville fire station doors by partially disassembling the doors and caulking them (remove vinyl, silicone around glass, and replace vinyl).

62.     On or about July 14, 2021, Defendant Wayne-Dalton visited the Granville fire station to repair the doors.

63.     On or about August 5, 2021, Robertson notified Plaintiff McKee that Defendant Wayne-Dalton's solution did not solve the door leaks.

64.     Defendant Wayne-Dalton returned to Granville to attempt to repair the doors on or about August 24, 2021; September 30, 2021; October 1, 2021; and October 20, 2021.

65.     On or about September 9, 2021, Robertson notified Plaintiff McKee that the doors were still leaking and, despite Granville having paid a premium for powder coated doors, the Granville fire station doors were rusting.

66.     Plaintiff McKee notified Defendant Wayne-Dalton that the repairs failed.

67.     Defendant Wayne-Dalton failed to repair the Granville fire station doors.

68.     Plaintiff McKee incurred seventy-five (75) hours of labor for which it has not been reimbursed in the process of reviewing and attempting to correct manufacturing defects in the Granville fire station doors.

69.     In and around June of 2022 Plaintiff McKee agreed to replace the Wayne-Dalton doors at the Granville fire station with similar doors manufactured by Clopay.

70.     The reasonable value of Plaintiff McKee's labor unreimbursed labor costs in reviewing and attempting to correct manufacturing defects in the Granville fire station doors is

9

approximately Ten Thousand Dollars ($10,000.00) – not including labor for replacing the original doors with Clopay doors which is estimated to be an additional Thirty Thousand Dollars ($30,000.00).

71.     Plaintiff McKee has incurred approximately One Hundred and Twenty-Five Thousand Dollars ($125,000.00) plus labor direct costs, overhead, and general and administrative expenses for replacing the Wayne-Dalton Model 452 doors at the Granville fire station.

### E.     McKee installed defectively manufactured Wayne-Dalton doors in the new Monroe Township fire station.

72.     In and around April of 2020, Monroe Township contracted with general contractor Action Contractors, LLC to construct a new fire station at 186 E. Coshocton St., Johnstown, Licking County, Ohio 43031.

73.     Action Contractors subcontracted with Plaintiff McKee to provide overhead doors for the new Monroe fire station in June of 2020.

74.     On or about October 21, 2020, Plaintiff McKee ordered thirteen (13) Wayne-Dalton Model 452 doors for the Monroe fire station.

75.     The Wayne-Dalton Partner Connect quote for the Monroe fire station doors (from which pricing information has been redacted) is attached and incorporated as Exhibit F.

76.     Defendant Wayne-Dalton's invoice (Invoice No. 18672780) for the Monroe fire station Model 452 doors (from which pricing information has been reacted) is attached and incorporated as Exhibit G.

77.     Defendant Wayne-Dalton delivered the Monroe fire station doors to Plaintiff McKee at its Groveport, Ohio location on or about December 11, 2020.

78.     On or about May 20, 2021, Plaintiff McKee finished installing the Monroe fire station doors.

79. Monroe Township's Fire Department moved into its new fire station on or about August 7, 2021.

80. On or about August 18, 2021, Action Contractors notified Plaintiff McKee that the Monroe fire station doors were leaking.

81. On or about August 20, 2021, Plaintiff McKee visited the Monroe fire station to review the door issues.

82. On or about September 11, 2021, Defendant Wayne-Dalton and Plaintiff McKee visited the Monroe fire station to repair the doors using Defendant Wayne-Dalton's proposed solution: "caulking along the bottom and sides of each panel on the inside to ensure that the precipitation is not coming in around the glass," and "adding bulb seal and new foam tape (as needed) to the joint of each section."

83. On or about September 27, 2021, Action notified Plaintiff McKee that Defendant Wayne-Dalton's solution had not fixed the leaks at the Monroe fire station.

84. The Monroe fire station doors are still not repaired.

85. Plaintiff McKee incurred twenty-five (25) hours of labor for which it has not been reimbursed in the process of reviewing and attempting to correct manufacturing defects in the Monroe fire station doors.

86. The reasonable value of Plaintiff McKee's labor unreimbursed labor costs in correcting the Monroe fire station doors is Three Thousand Five Hundred Dollars ($3,500.00).

87. In addition, Action withheld Eight Thousand Eight Hundred Eighty-Nine Dollars and Sixty Cents ($8,889.60) of the subcontract price and refuses to pay it to Plaintiff McKee given that the Wayne-Dalton doors are defective.

.

11

### F. McKee installed a defectively manufactured Wayne-Dalton door at Clark-Shawnee PK-6 School.

88.     On or about February 18, 2021, Plaintiff McKee ordered a Wayne-Dalton Model 452 door for the Clark-Shawnee Local Schools PK-6 school located at 1815 E. Possum Road, Springfield, Clark County, Ohio.

89.     Defendant Wayne-Dalton shipped the Clark-Shawnee project door to Plaintiff McKee on or about April 1, 2021.

90.     Defendant Wayne-Dalton's invoice (Invoice No. 18903007) for the Clark-Shawnee project Model 452 door (from which pricing information has been reacted) is attached and incorporated as Exhibit A.

91.     Defendant Wayne-Dalton delivered the door for the Clark-Shawnee project to Plaintiff McKee door at its Groveport, Ohio location.

92.     Plaintiff McKee installed the door at the Clark-Shawnee project on or about June 11, 2021.

93.     Plaintiff McKee received the first notice of problems with the door (leaks) at the Clark-Shawnee project on or about December 6, 2021.

94.     Plaintiff McKee sent technicians to inspect the door; the technicians adjusted the door's top brackets.

95.     Thereafter, on or about February 22, 2022, the Clark-Shawnee project general contractor sent photographs depicting ongoing door leaks to Plaintiff McKee.

96.     Plaintiff McKee promptly notified Defendant Wayne-Dalton of ongoing problems.

97.     On or about March 7, 2022, Defendant Wayne-Dalton notified Plaintiff McKee that Defendant Wayne-Dalton was replacing the Clark-Shawnee project door sections.

98. In the same communication, Defendant Wayne-Dalton stated that it would "leak test the replacement door sections in our factory prior to shipping."

99. Defendant Wayne-Dalton delivered the replacement door sections to Plaintiff McKee at its Groveport, Ohio location on or about June 16, 2021.

100. Defendant Wayne-Dalton's invoice (Invoice No. 80587895) for the replacement door sections, from which pricing information has been redacted, is attached, and incorporated as Exhibit H.

101. Defendant Wayne-Dalton acknowledged that the Clark Shawnee project door was defectively manufactured:



*Figure 3: Excerpt from Exhibit H, Wayne Dalton Invoice*

102. Plaintiff McKee replaced the defectively manufactured Wayne-Dalton door sections at the Clark-Shawnee project on or about July 22, 2022.

103. Plaintiff McKee incurred forty (40) hours of labor for which it has not been reimbursed in the process of reviewing and addressing the issues with the Clark-Shawnee project door.

104. The reasonable value of Plaintiff McKee's labor unreimbursed labor costs in correcting the Clark-Shawnee project door is Five Thousand Dollars ($5,000.00).

13

### G. McKee installed defectively manufactured Wayne-Dalton doors in South Central Power Company's new headquarters.

105.    South Central Power Company ("South Central") is an Ohio electricity generating cooperative corporation with its office and principal place of business at 720 Mill Park Dr., Lancaster, Fairfield County, Ohio 43130.

106.    On or about May 20, 2019, South Central announced plans to consolidate several facilities in a new headquarters building

107.    South Central contracted with Corna Kokosing Construction Company, a general contractor, to build South Central's new headquarters.

108.    Corna Kokosing subcontracted with Plaintiff McKee to install overhead doors at the new South Central headquarters building.

109.    In and around February, 2021 Plaintiff McKee installed Wayne-Dalton Model 452 doors for Ohio South Central's new headquarters building.

110.    South Central opened its new headquarters on or about December 13, 2021.

111.    South Central reported leak issues with the Wayne-Dalton doors later in February 2022.

112.    Plaintiff McKee tried to repair the Wayne-Dalton doors installed at South Central's new headquarters' building but was unsuccessful at doing so.

113.    In and around March of 2022, Defendant Wayne-Dalton proposed to correct the defective doors at South Central's new headquarters by caulking the "cap bead" (a rubber gasket) by hand.

114.    Defendant Wayne-Dalton caulked the doors at South Central's new headquarters in and around March, 2022.

115.    It remains unclear whether Defendant Wayne-Dalton was able to repair the doors at South Central's new headquarters.

116.    Plaintiff McKee has incurred Seven Thousand Five Hundred Dollars ($7,500.00) for parts and repairs, direct costs, overhead, and general and administrative expenses responding to complaints about the Wayne-Dalton Model 452 doors at the new South Central headquarters.

**H.    Defendant Wayne-Dalton's Model 452 doors are defective, but Defendant Wayne-Dalton failed and refused to correct the defects.**

117.    After decades of buying, installing, and serving Defendant Wayne-Dalton's Model 452 doors, Plaintiff McKee has encountered repeated manufacturing defects in recently installed doors, as demonstrated by the projects with Granville Township, Monroe Township, Clark Shawnee's PK-6 school, and South Central Power (collectively, the "Projects").

118.    The Wayne-Dalton's Model 452 doors installed at the listed Projects do not perform as previously manufactured Model 452 doors have performed for many years.

119.    Defendant Wayne-Dalton defectively manufactured the doors installed at each of the Projects.

120.    Defendant Wayne-Dalton acknowledged that it defectively manufactured the door at the Clark Shawnee project.

121.    The doors Defendant Wayne-Dalton manufactured for Granville, Monroe, and South Central have the same manufacturing defects as the door at the Clark Shawnee project.

122.    On or about March 7, 2022, Plaintiff McKee asked Defendant Wayne-Dalton why it was not replacing the defective door sections at the fire stations (Granville and Monroe Township).

123.    Defendant Wayne-Dalton responded by citing to its production capacity – not the absence of defects in the fire station doors.

15

124.   Defendant Wayne-Dalton has gone silent in the face of ongoing questions and requests to repair or replace the doors at Granville and Monroe Township.

## III.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

125.   Plaintiff McKee incorporate the allegations in the foregoing paragraphs as if fully restated.

126.   Plaintiff McKee and Defendant Wayne-Dalton have, through a course of performance and course of dealing, established a contractual relationship pursuant to which Plaintiff McKee sold products that Defendant Wayne-Dalton manufactured.

127.   The terms of the relationship are not contained in a single, executed and fully integrated writing.

128.   Defendant Wayne-Dalton asserts or may assert that the contract includes the Purported Wayne-Dalton Terms attached and incorporated as Exhibit B.

129.   Plaintiff McKee denies that the contract includes the Purported Wayne-Dalton Terms.

130.   Alternatively, if the Purported Wayne-Dalton Terms otherwise apply, then Defendant Wayne-Dalton waived them pursuant to the parties' course of dealing and course of performance, outlined above.

131.   Defendant Wayne-Dalton asserts or may assert that the contract includes the Purported Wayne-Dalton Warranty attached and incorporated as Exhibit C.

132.   Plaintiff McKee denies that the contract includes the Purported Wayne-Dalton Warranty.

133. Alternatively, if the Purported Wayne-Dalton Warranty otherwise applies, then Defendant Wayne-Dalton waived it pursuant to the parties' course of dealing and course of performance, outlined above.

134. An actual dispute relating to the parties' rights, duties, and obligations pursuant to the contract or contracts between Plaintiff McKee and Defendant Wayne-Dalton relating to Plaintiff McKee's door purchases described above, has arisen.

135. Defendant Wayne-Dalton's conduct relating to waiver includes visiting work sites, inspecting and attempting to repair doors onsite, and replacing doors.

136. The Purported Wayne-Dalton Warranty, moreover, fails of its essential purpose insofar as it requires buyers to return doors and door parts to Defendant Wayne-Dalton's factory, which would leave buyers' buildings open to the elements and vulnerable to theft.

137. This Court can issue declaratory relief determining the parties' rights, duties, and obligations, including, without limitation, whether the Purported Wayne-Dalton Terms or the Wayne-Dalton Warranty are included in the parties' contract or contracts.

138. Alternatively, if this Court determines that the parties' contract or contracts include either the Purported Wayne-Dalton Terms or the Purported Wayne-Dalton Warranty, this Court can issue declaratory relief determining whether and the extent to which Defendant Wayne-Dalton waived the Purported Wayne-Dalton Terms or the Purported Wayne-Dalton Warranty.

139. Alternatively, if this Court determines that the parties' contract or contracts include either the Purported Wayne-Dalton Terms or the Purported Wayne-Dalton Warranty, this Court can issue declaratory relief determining whether and the extent to which the Purported Wayne-Dalton Warranty fails of its essential and is unenforceable against Plaintiff McKee.

17

## SECOND CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

140.   Plaintiff McKee incorporates the allegations in the foregoing paragraphs as if fully restated.

141.   Plaintiff McKee and Defendant Wayne-Dalton are parties to a contract or contracts pursuant to which Plaintiff McKee purchased and Defendant Wayne-Dalton sold overhead doors:

a.   For installation at the Granville fire station as more fully alleged above;

b.   For installation at the Monroe fire station as more fully alleged above;

c.   For installation at the Clark Shawnee PK-6 school as more fully alleged above; and

d.   For installation at South Central's new headquarters as more fully alleged above.

142.   Defendant Wayne-Dalton agreed, implicitly or expressly, that the doors it sold to Plaintiff McKee were free from material defects in workmanship and manufacturing.

143.   Defendant Wayne-Dalton agreed, expressly or implicitly, that the doors it sold to Plaintiff McKee were merchantable and were fit for their intended purpose.

144.   Defendant Wayne-Dalton further warranted that the doors it sold to Plaintiff McKee were "insulated, weather-resistant, and virtually maintenance free."

145.   Plaintiff McKee satisfied all conditions precedent to Defendant Wayne-Dalton's performance.

146.   Defendant Wayne-Dalton materially breached its contract or contracts with Plaintiff McKee by, without limitation to other breaches, delivering defectively manufactured doors to Plaintiff McKee at its Groveport, Ohio location.

147.   Defendant Wayne-Dalton materially breached its contracts with Plaintiff McKee by, without limitation to other breaches, delivering doors that were not weather-resistant.

148. Such doors were neither merchantable nor fit for their intended purpose.

149. Defendant Wayne-Dalton's attempts to disclaim express and implied warranties were invalid.

150. Defendant Wayne-Dalton's limited warranty fails of its essential purpose.

151. Plaintiff McKee sustained damages as a direct and proximate result of Defendant Wayne-Dalton's breaches of contract and warranty (a) on the Granville fire station project; (b) on the Monroe fire station project; (c) on the Clark Shawnee project; and (d) on the South Central Project, in amounts to be determined at trial, but believed to exceed One Hundred Eighty-Nine Thousand Dollars ($189,000.00).

WHEREFORE, Plaintiff McKee Door respectfully requests the following relief in its favor against Defendant Wayne-Dalton:

     A.     Declaratory relief determining the contract terms applicable to each of Plaintiff McKee's purchases described herein;

     B.     Compensatory damages in an amount to be determined at trial, but more than Twenty-Five Thousand Dollars ($25,000.00);

     C.     If provided for by law, or statute or Defendant's conduct, an award of reasonable attorneys' fees, currently in excess of Thirty-Five Thousand Dollars ($35,000.00);

     D.     The costs of this action; and

     E.     Such other and further relief as the Court deems just and proper.

19

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

By: */s/ Richard A. Talda*
    Richard A. Talda (0023395) (Trial
    Attorney)
    Daniel J. Gentry (0065283)
    33 W. First Street, Suite 600
    Dayton, OH 45402
    Phone:  937-223-8177
    Fax:     937-223-6705
    E-mail: talda@coollaw.com
             gentry@coollaw.com

*ATTORNEYS FOR PLAINTIFF*
*MCKEE DOOR*

## **JURY DEMAND**

Plaintiff McKee Door Sales of Columbus, Inc. demands a trial by jury on all issues so triable.

/s/Richard A. Talda
Richard A. Talda

w:\wdox\client\014131\00381\01317527.docx